UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>SANTA CLARA COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>        Defendants. | Case No. 22-cv-04948-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 64 |

Now before the Court for consideration is the motion to dismiss the Second Amended Complaint ("SAC") filed by Defendants County of Santa Clara ("County") and Sharon Jenkins. The Court has considered the parties' papers and relevant legal authority, and it finds this matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the Court GRANTS the motion to dismiss.

**BACKGROUND**

**A.    Allegations in the SAC.**

Plaintiffs Jane and Jill Doe ("Plaintiffs") were minor children at all relevant times.[1] (Dkt. No. 61, SAC, ¶ 3.) The Santa Clara Department of Family and Children's Services ("DFCS") removed Plaintiffs from their parents' care due to alleged substance abuse and domestic violence issues. (*Id.* ¶ 11.)

Jane, the older sister, was removed before Jill's birth. At the time of her removal, Jane had a close personal relationship with her maternal grandmother. (*Id.*) Jane's grandmother frequently

---

[1] For purposes of resolving this motion to dismiss, the Court accepts all well-pleaded facts in the SAC as true.

acted as her caregiver. (*Id.*) Nevertheless, DCFS declined to consider placing Jane with her grandmother due to the grandmother's criminal history and poor relationship with Jane's mother. (*Id.* ¶ 14.) DCFS also declined to place Jane with her maternal great-grandparents, because Jane's mother abused her on their property. (*Id.* ¶ 13.) Finally, DCFS declined to place Jane with a maternal cousin because she lived outside of Santa Clara County. (*Id.* ¶ 15.)

DCFS instead placed Jane with Brian Hernandez and Marissa Clark. (*Id.* ¶ 16.) Hernandez and Clark were licensed foster parents residing in Merced County, and Jane's mother initially requested Jane be placed with them. (*Id.*)

According to Plaintiffs, "DCFS purposefully lied" to the family court "about the acrimony between the mother and the great grandparents, and falsely accused the [g]randmother of inappropriate behavior with the mother as well as her criminal history." (*Id.* ¶ 19.) Plaintiffs assert that they cannot allege particular falsehoods with more specificity because they have not obtained access to the family court records or transcripts. (*Id.*)

After the placement, DCFA falsely represented that Jane was treated well in her placement, and it failed to investigate the conditions in the Hernandez and Clark home. (*Id.* at ¶ 20.) DCFS did not consider the logistical difficulties of familial reunification given the distance between the foster home and Santa Clara County. (*Id.* at ¶ 21.)

At some point in this process, Jane's mother became pregnant with Jill, and DCFS assigned Defendant Sharon Jenkins to be the sisters' social worker. (*Id.* at ¶ 23, 26.) Jenkins visited Hernandez and Clark monthly. (*Id.* ¶ 25.) Clark posted on Facebook and other social media that she would soon adopt two children. (*Id.* ¶ 26.) Plaintiffs' biological family confronted Jenkins about the Facebook posts, but Jenkins told the family and the court that no decision regarding placement or adoption had been made. (*Id.* ¶ 27.) Jill was nevertheless removed at birth from the hospital and placed with Hernandez and Clark. (*Id.* ¶ 28.)

Shortly after Jenkins placed Jill with Hernandez and Clark, Merced County removed other foster children from Hernandez and Clark's care. (*Id.* ¶ 32.) Jane recalls Hernandez and Clark used illicit substances in the home, and Hernandez physically and sexually abused the other foster children. (*Id.*) Merced County did not place any other children with Hernandez and Clark. (*Id.* ¶

2

33.) Jenkins did not investigate the reasons for the children's removal. (*Id.* ¶ 34.)

Jenkins reported that the home was appropriate for Jane and Jill, and she failed to uncover or disclose substance abuse and domestic violence. (*Id.*) At the hearing to terminate reunification services, Jenkins informed the family court that Plaintiffs were receiving great care in their foster home. (*Id.* ¶ 35.)

In anticipation of Hernandez and Clark adopting the children, DFCS contracted a third party to conduct a home study on the home. (*Id.* ¶ 38.) The individual who conducted the home study submitted a form with check boxes, and she checked or unchecked boxes that were materially untrue, such as denial of substance use, physical abuse, and sexual abuse. (*Id.* ¶¶ 38-39.) The completed form was not presented to the family court. (*Id.* ¶ 39.) Hernandez and Clark then adopted Plaintiffs. (*Id.* ¶ 40.)

Plaintiffs suffered horrific abuse at the hands of Hernandez and Clark after the adoption was finalized. (*Id.* ¶ 41.) Hernandez forced Jane to consume drugs and alcohol and sexually abused her from the ages of four to thirteen. (*Id.* ¶¶ 42-45.) Clark subsequently divorced Hernandez and married another man who physically abused the children. (*Id.* ¶¶ 46-47.) Jill experienced physical and emotional abuse from Clark and her second husband. (*Id.* ¶ 51.)

In November 2021, Jane successfully ran away to her maternal grandmother's home. (*Id.* ¶ 48.) In 2022, Jill became ill after she accidentally ingested drugs being manufactured in Clark's home. (*Id.* ¶ 53.) In response, Clark abandoned Jill at the maternal grandmother's house, where Jill now lives with her grandmother and Jane. (*Id.* ¶¶ 53, 55.)

**B.      Procedural History.**

Plaintiffs filed this case on August 30, 2022 against Santa Clara County (the "County"), Jenkins, DFCS, the Santa Clara Department of Health and Human Services, Social Workers 1-500, Hernandez, and Clark. The County and Jenkins moved to dismiss on the basis that Plaintiffs failed to state a claim and that they were absolutely or qualifiedly immune from Plaintiffs' claims. The Court granted the motion, with leave to amend.

Plaintiffs filed a First Amended Complaint on May 19, 2023. Because Plaintiffs had not been able to effect service on Hernandez, Plaintiffs sought to serve him via publication. After

3

1  Plaintiffs failed to comply with the statutory requirements in four attempts to move for service by
2  alternate means, the Court dismissed the action as against Hernandez without prejudice.
3        The Court granted the County's and Jenkins' motion to dismiss the amended complaint for
4  failure to state a claim, with leave to amend with regard to Plaintiffs' Section 1983 claims, judicial
5  deception claim, and *Monell* claims only. Shortly thereafter, the Court dismissed the action as
6  against Clark for failure to demonstrate service.
7        Plaintiffs filed the SAC on February 29, 2024. Plaintiffs bring three claims for relief: (1)
8  denial of familial association and privacy in violation of 42 U.S.C. section 1983; (2) *Monell*-
9  related claims; and (3) judicial deception. The County and Jenkins again move to dismiss for
10  failure to state a claim.

**ANALYSIS**

**A.    Legal Standard Applicable to Motions to Dismiss for Failure to State a Claim.**

Plaintiffs no longer erroneously refer to the "any set of facts" pleading standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). However, in defining the applicable legal standard, Plaintiffs state only that the Court must accept the allegations in the complaint as true, as set forth by the Court in its previous Orders and in *Lazy Y Ranch v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Although the Court accepts the well-pleaded facts in the SAC as true, the Court does not accept the truth of legal conclusions or implausible inferences contained within the SAC. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

4

If the allegations are insufficient to state a claim, a court may deny leave to amend if amendment would be futile. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). Amendment may be futile if a plaintiff demonstrates inability or unwillingness to make necessary changes to the complaint. *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

### B. The Court Takes Judicial Notice of the Juvenile Court Proceedings.

District courts may consider materials outside the pleadings without converting a motion under Rule 12(b)(6) to a motion for summary judgment under Rule 12(d) when the materials are incorporated by reference or subject to judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Courts regularly take judicial notice of "undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (internal citations omitted). A court can take judicial notice of a court filing even if it is sealed. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Defendants renew their request for the Court to take judicial notice of the juvenile court records attached to the Baker Declaration submitted in support of their first motion to dismiss. (Dkt. No. 17, Baker Decl., Exs. A-J.) The records are from *In re: A.C.* (Case No. JD17722) and *In re: J.F.* (Case No. JD18718), Superior Court of California, County of Santa Clara, Juvenile Court.

As the Court previously concluded, (*see* Dkt. No. 25, Order, at 3), these records are proper subjects of judicial notice. The Court now grants the request and considers the records in resolving Defendants' motion.

### C. Plaintiffs Fail to Plead a Section 1983 Claim.

Plaintiffs bring a Section 1983 claim against Jenkins for violation of their constitutional rights to familial association and privacy. A plaintiff bringing a Section 1983 claim must allege facts demonstrating: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). The plaintiff must demonstrate that each individual defendant employee

personally participated in the deprivation of her rights. *Jones v. Williams*, 297 F.3d 930, 934-935 (9th Cir. 2002).

### 1. The Court Dismisses Plaintiffs' Section 1983 Claim against Santa Clara County with Prejudice.

In the First Amended Complaint, Plaintiffs brought a Section 1983 claim against Jenkins only. (*See* Dkt. No. 30, First Am. Compl., at 14.) In its Order granting Defendants' previous motion to dismiss, the Court stated that Plaintiffs must obtain express leave of the Court before adding claims or parties. (Dkt. No. 56, Order, at 11:20-21.) Plaintiffs did not seek or obtain leave to add a Section 1983 claim against the County. Moreover, Plaintiffs did not respond to Defendants' motion as to the County's liability. Therefore, this additional claim is dismissed.

### 2. The Court Dismisses Plaintiffs' Section 1983 Claim against Jenkins with Prejudice.

The SAC alleges that Jenkins violated Plaintiffs' constitutional rights in two ways. First, the SAC claims that Jenkins intentionally deprived Plaintiffs of their right to familial association by placing Plaintiffs with Clark and Hernandez. (SAC ¶ 66.) Second, the SAC alleges that Jenkins maliciously or recklessly violated Plaintiffs' rights by misrepresenting the Clark-Hernandez home as safe and appropriate to the juvenile court, such that Plaintiffs were placed with Clark and Hernandez instead of maternal relatives. (*Id.* ¶ 68.) Neither of these theories holds water.

#### a. Jane Cannot State a Claim for Violation of Her Right to Familial Association or Privacy.

A child's right to familial association arises from the Fourth Amendment right to be free from unreasonable seizures. *David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022). Children have a right to live together with their parents. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1149 (9th Cir. 2021). However, children do not have a right to live together with their grandparents if there is no established familial relationship between the children and grandparents such that government action would break up an existing family unit. *Mullins v. State of Or.*, 57 F.3d 789, 793 (9th Cir. 1995). In order to plausibly allege an existing family unit, a plaintiff must allege a "long-standing custodial relationship" between the child and the non-parent relative. *Id.*

6

at 794.

The juvenile court records indicate that Jane was born in 2006, and that she was placed with Hernandez and Clark in early 2007. (Baker Ex. 2, at 11.) Jane was thus an infant at the time of her removal. Before her removal, Jane lived in a guesthouse on her great-grandparents' property, not with her grandmother. (SAC ¶ 13.) Jane's assertions that her grandmother was a "frequent caregiver" (or that a maternal cousin visited often) cannot plausibly give rise to an inference that Jane, as an infant residing apart from her grandmother, had a "long-standing custodial relationship" with her grandmother. Accordingly, Jane did not have a liberty interest in living together with her grandmother.

### b. Jill Cannot State a Claim for Violation of Her Right to Familial Association or Privacy.

Plaintiffs admit that Jill was too young to establish a familial relationship with her biological relatives prior to her removal. They argue, however, that "[t]he SAC documents that. . . J[ill] was able to form a familial relationship during her early years" with her relatives. (Dkt. No. 66, Opposition, at 5:20-22.) Plaintiffs provide no citation to any specific allegations in the SAC which indicate that Jill formed such a relationship. In fact, the SAC states that Jill "did not even know she had a biological family until" she was 13 years old, when Clark abandoned Jill. (SAC ¶ 64.) There is no protected interest in "creating a new family unit where none existed before." *Mullins*, 57 F.3d at 794.

### c. Plaintiffs Fail to State a Section 1983 Claim Based Upon Judicial Deception.

Deliberate fabrication of evidence in civil child abuse proceedings may violate the Fourteenth Amendment if it results in deprivation of a liberty or property interest. *See Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (noting possibility of "fabrication-of-evidence" claim under Section 1983 for violation of the Sixth Amendment Confrontation Clause). "To state a violation of the constitutional right to familial association through judicial deception, a plaintiff must allege '(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision.' " *Kaulukukui*, 38 F.4th at 801 (quoting *Benavidez*, 993 F.3d at 1147).

7

As discussed above, Plaintiffs did not have a constitutionally protected right to familial association.

Moreover, none of the instances of alleged judicial deception supports a plausible inference that Jenkins deliberately or recklessly deceived the juvenile court. Plaintiffs contend that Jenkins (1) knew that foster children from Merced County had been removed from Clark and Hernandez's care but failed to investigate; (2) did not report the Merced children's removal from the home to the juvenile court; (3) ignored the abuse happening in the home at the time of adoption; and (4) sent a third-party to conduct the pre-adoption home study to determine suitability. (Opposition, at 6:8-20.)

Plaintiffs' claims regarding the Merced children are pure speculation. The SAC states that the children were removed "[s]hortly after" Jill was placed in the Clark-Hernandez home. (SAC ¶ 32.) Jill was placed in the home in January 2008, when Jane was eighteen months old. (Baker Ex. E.) Jane remembers the children and believes they were abused, but Plaintiffs admit they "are not privy to the exact reason for the removal." (SAC ¶ 32.) With great respect to Jane, it is implausible that an eighteen-month-old child would have sufficient recollection of her foster siblings to be aware that Merced County removed the children from the home due to abuse, as opposed to any number of alternate reasons for removal. Without more, the abuse of the Merced children and their removal cannot form the basis of a deception claim against Jenkins.

Moreover, Jane remembers being afraid "to tell the truth" about her foster siblings and living conditions to Jenkins. (*Id.*) Plaintiffs also admit the possibility that Jenkins "failed to see the physical and sexual abuse Hernandez was perpetrating in the home" on the Merced children at the time. (*Id.* ¶ 30.) If Jane never told Jenkins about the abuse, and Jenkins failed to notice signs of abuse, then Jenkins could not have intentionally withheld that information from the juvenile court.

Plaintiffs do not plausibly allege that Santa Clara's practice of contracting a third-party to conduct home study evaluations supports an inference of judicial deception on Jenkins' part. Further, the home study was not shown to the juvenile court, and so its statements that Clark and Hernandez denied substance use, physical abuse, and sexual abuse could not have deceived the

1  court. (*Id.* ¶ 39.)

2  Accordingly, Plaintiffs' Section 1983 claims against Jenkins are dismissed, with prejudice.

### D.  Plaintiffs Fail to Plead a *Monell* Claim.

The County moves to dismiss Plaintiffs' *Monell* claim on the basis that Plaintiffs again plead only the bare elements of the claim. "A government entity may not be held liable under Section 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)). "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.' " *Id*. (citation omitted).

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Thus, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless" there is proof that the incident "was caused by an existing, unconstitutional municipal policy..." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). To withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere "formulaic recitations of the existence of unlawful policies, conducts or habits." *Warner v. County of San Diego*, No. 10-1057, 2011 WL 662993, at *4 (S.D. Cal. Feb.14, 2011).

Plaintiffs contend that Santa Clara County's policy of using a third-party to conduct pre-adoption assessments is unconstitutional. They further argue that the County "failed to consistently adhere to its own policies and procedures with regard to relative placement." (Opposition, at 7:18-19.)

The SAC identifies four "policies" allegedly at play here:

a.  the policy of detaining and/or removing children from their family and homes without

9

      exigent circumstances (imminent danger of serious bodily injury), court order and/or consent;

  b.  the policy of approving foster homes in a deeply flawed manner;

  c.  the policy of approving foster homes for adoption despite evidence of physical, sexual, and substance abuse in the home; and

  d.  by acting with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourth and Fourteenth Amendments, when performing actions related to dependency type proceedings.[2]

(SAC ¶ 76.)

Policy (a) does not apply here, as both Jane and Jill were removed from their biological parents by a court order. Policy (b) is not a policy at all. Plaintiffs fail to articulate what specific rules or practices were in place that make Santa Clara's method of approving foster homes "deeply flawed."

Policy (c) is conclusory as pleaded. Plaintiffs fail to provide well-pleaded facts to support that Santa Clara had a policy of approving foster homes despite evidence of abuse. As discussed above, Plaintiffs do not plausibly allege that Santa Clara County was on notice of abuse within the Clark-Hernandez home prior to the adoption. Plaintiffs allege that Jenkins "never took the time to get to know JANE or JILL or follow County protocols with regard to monthly compliance visits," which meant that Jenkins missed signs of abuse. (*Id.* ¶ 82.) If anything, this allegation implies that Santa Clara County had a policy of looking for abuse via monthly check-ins, but Jenkins failed to follow the policy with regard to Plaintiffs. More is needed to plausibly allege a policy or widespread practice.

Policy (d), failure to train, once again excludes relevant details. As the Court explained in its Order granting the Motion to Dismiss the FAC, Plaintiffs must allege: (1) the existing training program is inadequate "in relation to the tasks the particular officers must perform"; (2) the failure to train "amounts to deliberate indifference to the rights of persons with whom the officers come

---

[2] In a parenthetical, Plaintiffs note that this list is "not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings." (SAC ¶ 76.) Plaintiffs do not explain why, two years after filing their initial complaint, they have not investigated or obtained discovery to better support their *Monell* claim.

10

into contact"; and (3) that the inadequacy of the training "actually caused" the purported constitutional deprivation. *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989). The SAC includes only conclusory allegations that the County failed to adequately train or supervise its officers. (SAC ¶¶ 76, 81.)

To the extent Plaintiffs added details in the SAC, those minimal details allege failure to train employees to evaluate genetic relatives for placement. (*Id.* ¶ 84.) Plaintiffs add that "Jenkins repeatedly told the grandmother she did not have to perform [a criminal and child abuse background check or walk through the home for relatives who come forward for placement] and refused at all time[s] to do so." (*Id.*) "Had the requisite training been proper [sic], both Jenkins and her predecessors would have had to report that each of the relatives who had come forward were in fact appropriate." (*Id.*) However, the genetic non-parent relatives did not have a constitutional right to custody, and so failure to train to evaluate the relatives cannot be the source of a *Monell* claim.

The SAC, when considered as a whole, includes sufficient detail to infer that Santa Clara County failed to protect Plaintiffs from the abuses they ultimately suffered in the Clark-Hernandez home. The SAC does not, however, take the next step to plausibly allege that the abuse resulted from policies or practices that extended beyond Plaintiffs' treatment. *See Trevino*, 99 F.3d at 918 (holding *Monell* liability requires more than "isolated or sporadic incidents"). Nor does the SAC identify a constitutional right which the policies supposedly infringed.

These failures could be cured in a fourth pleading. Accordingly, the Court grants leave to amend.

### E. Plaintiffs' Claim for Judicial Deception Fails.

Plaintiffs' separate claim for judicial deception fails for the same reasons their judicial deception claim under Section 1983 fails. Plaintiffs did not identify a constitutional right which was violated by the alleged deception, and the SAC does not plead fraud with particularity after three attempts to do so. The Court thus dismisses the judicial deception claim, without leave to amend.

//

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the SAC is GRANTED. Plaintiffs' Section 1983 claims against Jenkins and the County are dismissed, with prejudice. Plaintiffs' separate judicial deception claim is dismissed, with prejudice. Plaintiffs' *Monell* claim is dismissed, without prejudice.

Plaintiffs may amend to cure the deficiencies in their *Monell* claim only if counsel believe they have a good faith basis under Rule 11 to file a Third Amended Complaint. Any amended complaint shall be filed within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: September 3, 2024

_____
JEFFREY S. WHITE
United States District Judge