1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    JANE DOE, et al.,                          Case No.  22-cv-04948-JSW

8                        Plaintiffs,
                                                **ORDER GRANTING IN PART AND**
9           v.                                  **DENYING IN PART MOTION TO**
                                                **DISMISS THIRD AMENDED**
10   COUNTY OF SANTA CLARA,                      **COMPLAINT**

11                       Defendant.              Re: Dkt. No. 75

12

13          Now before the Court for consideration is the motion to dismiss the Third Amended

14   Complaint ("TAC") filed by Defendant County of Santa Clara ("County").  The Court has

15   considered the parties' papers and relevant legal authority, and it finds this matter suitable for

16   disposition without oral argument.  *See* N.D. Civ. L.R. 7-1(b).  For the following reasons, the

17   Court GRANTS, IN PART, AND DENIES, IN PART, the motion to dismiss.

18                                     **BACKGROUND**

19   **A.      Procedural History.**

20          Plaintiffs originally filed suit against their adoptive parents Marissa Clark and Brian

21   Hernandez, their social worker Sharon Jenkins, and various departments of Santa Clara County.

22   (*See* Dkt. No. 1, Complaint.)

23          The Court dismissed the claims against Clark and Hernandez without prejudice for failure

24   to serve.  (Dkt. Nos. 53, 58.)  The parties stipulated to substitute the County of Santa Clara as a

25   defendant and to dismiss its departments, which are not separate legal entities capable of being

26   sued.  (Dkt. No. 71.)

27          Jenkins and the County jointly moved to dismiss the Second Amended Complaint

28   ("SAC").  The Court dismissed Plaintiffs' claims against Jenkins with prejudice, but it permitted

United States District Court
Northern District of California

1   Plaintiffs to amend their pleadings as to their *Monell* claim against the County.  (Dkt. No. 72,

2   Order Granting Mot. to Dismiss SAC.)

3          Plaintiffs filed the TAC on September 23, 2024.  (Dkt. No. 73.)  The County again moves

4   to dismiss for failure to state a claim.

5   **B.      New Allegations in the TAC.**

6          The Court set out the factual background of this matter in detail in its previous order

7   granting Defendants' motion to dismiss the SAC.  (*See* Order Granting Mot. to Dismiss SAC.)

8   The facts, derived from the allegations in the pleadings and the juvenile court records of which

9   this Court took notice, remain largely unchanged in the TAC.

10         Plaintiffs add allegations regarding the County's visitation policies.  Plaintiffs allege that

11  the County has a policy of not visiting foster children in their placements, but instead holds visits

12  at a "visitation center," where the children have supervised time with their biological parents.  (*Id.*

13  ¶¶ 62, 63.)  Plaintiffs allege that the visitation centers are inherently uncomfortable for children

14  and prevent the children from building rapport with their social workers.  (*Id.* ¶ 64.)  Plaintiffs

15  claim that between 21 and 40 percent of foster children did not receive social worker visits during

16  the relevant time period.  (*Id.* ¶ 59.)

17         Plaintiffs claim that these policies directly resulted in their harm.  In the SAC, Plaintiffs

18  alleged that their social worker, dismissed defendant Sharon Jenkins, visited with dismissed

19  defendants Clark and Hernandez monthly before Jill's birth.  (Dkt. No. 61, SAC, ¶ 25.)  In the

20  TAC, Plaintiffs clarify that Jenkins never visited Plaintiffs at the Clark-Hernandez residence.

21  (TAC, ¶¶ 72, 113.)  Plaintiffs have no memory of ever speaking with Jenkins, although they do

22  have memories of going to a visitation center to see their biological parents.  (*Id.* ¶ 72.)  Plaintiffs

23  allege that, had the County had a policy of home visits, they would have built a rapport with their

24  social worker and disclosed the abuse and/or their social worker would have directly observed

25  abuse in the Clark-Hernandez household.  (*Id.* ¶ 74.)

26                                    **ANALYSIS**

27  **A.      Applicable Legal Standards.**

28         Dismissal is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings

United States District Court
Northern District of California

1   fail to state a claim upon which relief can be granted.  A court's "inquiry is limited to the

2   allegations in the complaint, which are accepted as true and construed in the light most favorable

3   to the plaintiff."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

4        Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a

5   plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels

6   and conclusions, and formulaic recitation of the elements of a cause of action will not do."  *Bell*

7   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286

8   (1986)).  Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but

9   must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

10   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

11   draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

12   *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

13        If the allegations are insufficient to state a claim, a court should grant leave to amend

14   unless amendment would be futile.  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

15   Amendment may be futile if a plaintiff demonstrates inability or unwillingness to make necessary

16   changes to the complaint.  *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th

17   Cir. 2011).

18   **B.    Plaintiffs State a *Monell* Claim.**

19        The County argues that the TAC does not allege the existence of an express or official

20   policy, or a widespread custom or practice, that resulted in violation of Plaintiffs' constitutional

21   rights.  Plaintiffs respond that the County ignores inconvenient allegations in the TAC and that

22   they have sufficiently alleged violation of their constitutional right to social worker supervision

23   and protection from harm inflicted by a foster parent.

24        Under *Monell*, the County can only be liable for injuries inflicted pursuant to an official

25   government policy or custom.  *See Monell v. N.Y. Dept. of Soc. Serv.*, 436 U.S. 658, 690-94

26   (1978).  Therefore, in order to state against the County, Plaintiffs must show one of their

27   constitutional rights was violated *and* that the County had a custom created by those who may be

28   fairly said to determine official policy, which amounted to, at a minimum, deliberate indifference

United States District Court
Northern District of California

3

1   to Plaintiffs' constitutional rights and that the custom was the moving force behind the

2   constitutional violation.  *See Blair v. City of Pomona*, 223 F.3d 1074, 1079 (9th Cir. 2000).

3       **1.    Plaintiffs Identify a Protected Right.**

4       The County contends that the TAC fails to articulate any constitutional rights which were

5   violated.  The County correctly notes that certain of the rights claimed by Plaintiffs are not

6   adequately stated in the TAC, but the Court finds that Plaintiffs adequately allege violation of their

7   rights as children in government care.

8       Social workers owe foster children a duty to protect them from harm and to provide

9   minimally adequate care.  *See Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 842 (9th Cir.

10  2010) (citing *Carlo v. City of Chino*, 105 F.3d 493, 501 (9th Cir. 1997)).  A violation occurs when

11  state officials act with such deliberate indifference to the liberty interest that their actions "shock

12  the conscience."  *Id.* at 844 (quoting *Brittain v. Hansen,* 451 F.3d 982, 991 (9th Cir. 2006)).

13  Conduct that "shocks the conscience" is "deliberate indifference to a known, or so obvious as to

14  imply knowledge of, danger."  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1064 (9th Cir.2006)

15  (citation and internal quotation marks omitted).  As applied in the foster care context, the

16  deliberate indifference standard "requires a showing of an objectively substantial risk of harm and

17  a showing that the officials were subjectively aware of facts from which an inference could be

18  drawn that a substantial risk of serious harm existed and that either the official actually drew that

19  inference or that a reasonable official would have been compelled to draw that inference."  *Tamas*,

20  630 F.3d at 845.

21      In the TAC, Plaintiffs allege that the County's policies demonstrate deliberate indifference

22  to danger and failure to provide minimally adequate care.  (TAC, ¶¶ 109-110.)  The TAC supports

23  a reasonable inference that Plaintiffs and other children experience abusive conduct as a result of

24  the County's failure to adequately supervise foster care.

25      **2.    The Other Rights Claimed by Plaintiffs Are Not Adequately Alleged.**

26      Plaintiffs claim that the County violated their rights by having a policy of "racial

27  discrimination in removing Latino children from their homes and not placing them with kin."

28  (Dkt. No. 82, Opposition, at 7:13-14.)

United States District Court
Northern District of California

4

Plaintiffs fail to identify any "kin" with whom they had a right to be placed. As the Court has noted in its orders dismissing previous iterations of the pleadings, Plaintiffs must allege a "long-standing custodial relationship" with a non-parent relative at the time of placement in order to allege a constitutionally protected relationship. *See Mullins v. State of Or.*, 57 F.3d 789, 794 (9th Cir. 1995) (holding Constitution protects existing custodial relationships, not the creation of new family units). Plaintiffs do not include any allegations that such a relationship existed with their biological family members. (*See* Order Granting Mot. to Dismiss SAC, at 6-7.)

Additionally, Plaintiffs have repeatedly denied that they were wrongfully removed from their biological parents' care. (*See* Dkt. No. 38, Opposition to Motion to Dismiss First Amended Complaint, at 7.) Plaintiffs cannot state a claim for discrimination in their removal.

**3.      One of the Policies and Customs Identified by Plaintiffs May Support a Claim.**

Plaintiffs contend that the County had a policy and custom of failing to visit and evaluate children in their placements. Although it is a close call, this allegation passes muster at the pleading stage.

Plaintiffs allege that the County had an express policy of not evaluating out-of-county households, but rather required children to meet with their social workers at visitation centers. Plaintiffs contend that this issue was widespread, and that between 21 and 40 percent of children in the County's foster care system were not visited by social workers. Plaintiffs explain a link between failure to visit and failure to protect children in government care.

Plaintiffs further allege that no social worker from the County ever evaluated the Clark-Hernandez home. Plaintiffs allege that the abuse occurring in the home would have been discovered prior to their adoption had the County properly evaluated the home.

By the thinnest of margins, the TAC contains enough well-pleaded facts to support an inference that the County could have discovered abuse during the Plaintiffs' time in foster care had the County had and enforced a policy of home visits, and that the abuse suffered by Plaintiffs as a result was not isolated or sporadic. *See Gatlin v. Contra Costa Cnty.*, No. 21-CV-00370-SI, 2024 WL 3873979, at *12 (N.D. Cal. Aug. 16, 2024) (noting, "It is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice

1    claim," and denying motion to dismiss by thin margin) (quoting *Gonzalez v. Cnty. of Merced*, 289

2    F. Supp. 3d 1094, 1099 (E.D. Cal. 2017)).

3          **4.**        **The Other Policies Claimed by Plaintiffs Are Not Adequately Pleaded.**

4          Plaintiffs contend that the County violated their rights of protection from harm and

5    minimally adequate care via five additional policies or customs: (1) disproportionately removing

6    Latina children; (2) failure to train employees in family finding; (3) failing to work with other

7    counties and service providers; (4) failing to properly evaluate adoptive homes; and (5) imposing

8    such high workloads on social workers that proper assessment of families and foster homes is

9    impossible.  None of these policies supports a *Monell* claim in this case.

10          As discussed above, policies (1) and (2) are irrelevant for lack of connection to violations

11    of Plaintiffs' rights. Plaintiffs cannot state a claim based upon disproportionate removals of Latina

12    children because they do not contend they were wrongfully removed from their biological parents'

13    care.  Plaintiffs also cannot state a claim for failure to train employees in family finding because

14    Plaintiffs did not have a right at the time of their placement to be placed with biological family

15    members with whom they did not have a pre-existing family unit.  *See City of Los Angeles v.*

16    *Heller*, 475 U.S. 796, 799 (1986) (holding that, in context of *Monell* claim, "the fact that

17    departmental regulations might have authorized [constitutional harm] is quite beside the point"

18    where the plaintiff did not suffer constitutional harm).

19          Policy (3), failure to work with other counties and service providers, is not adequately

20    pleaded.  The TAC includes allegations that the County did not coordinate with Merced County

21    with regard to Plaintiffs' care.  It does not include any allegations that, during the relevant time

22    period, the County had a general practice or custom of not collaborating with other counties.  *See*

23    *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (explaining, "[l]iability for improper custom

24    may not be predicated on isolated or sporadic incidents").

25          Policy (4), failure to properly evaluate homes adoption, fails for the same reason.

26    Plaintiffs point only to their own circumstances, not to a pattern of failures to evaluate that

27    resulted in the violation of their rights.

28          Policy (5), imposing high workloads on case workers, is likewise not adequately alleged.

United States District Court
Northern District of California

Plaintiffs do not allege that high case loads occurred during the relevant time period; that there was a causal relationship between high case loads and their harm; or that the high case loads resulted in a policy of insufficiently evaluating homes for placement.

**CONCLUSION**

For the foregoing reasons, the County's motion to dismiss the TAC is GRANTED, IN PART, AND DENIED, IN PART. Plaintiffs may proceed on their theory that the County violated their rights to safety and minimally adequate care as children in government care as a result of the County's policy of not visiting children in their placements. The County shall file an answer by no later than March 3, 2025. The parties shall appear for an initial case management conference on March 21, 2025, at 11:00 a.m. and shall submit a joint case management statement by March 14, 2025.

**IT IS SO ORDERED.**

Dated: February 11, 2025

JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California

7